JAMES W. WINSLOW *vs.* SAMUEL PRINCE & others.   BARTLETT CLAGHORN *vs.* EDMUND CROSBY.

A warrant, appointing a branch pilot for the coasts of Nantucket and Martha's Vineyard and over Nantucket Shoals, does not under the thirty-second chapter of the revised statutes, and did not under *St.* 1819, *c.* 155, nor, it seems, since *St.* 1783, *c.* 56, confer an exclusive right to such pilotage, nor the right to demand and receive of the master or owner of a vessel, bound through the Vineyard sound and over the shoals, pilotage fees for services tendered and not accepted.

IN these cases, which were argued by *T. D. Eliot*, for the plaintiffs, and *H. G. O. Colby*, for the defendants, the facts sufficiently appear in the opinion of the court, which was delivered at the October term, 1852.

SHAW, C. J.   These are actions brought by the two plaintiffs, severally, as Vineyard pilots, for pilotage fees, alleged by them to be due to them, respectively, for offering their services to the two vessels described, bound through the Vineyard sound, and over Nantucket shoals to Boston bay.   The first case is that of the barque Portland, bound from Sag-Harbor, where she was purchased, to Boston, and the offer was made by the plaintiff Winslow in the harbor of Newport. The other was that of the barque Gulnare, bound through the

Vineyard sound, over Nantucket shoals, the offer having been made, whilst the vessel was lying at anchor, at Holmes's Hole in Martha's Vineyard.

As these are not claims for services actually rendered, but draw in question an important claim of right, before examining the particular circumstances of the several cases, we have thought it best, first, to examine the system of laws, on which they are founded, and to consider the question on principle.

We have again to express our surprise and regret, that the laws of this commonwealth regulating pilotage, and the rights and duties of pilots, for our various coasts and ports, appear to be in a state somewhat confused, and difficult to be understood and applied. They concern the great interests of commerce and navigation ; they nearly affect the rights of a very hardy, useful, and meritorious class of men ; and they ought, therefore, to be placed on a ground, at once plain, clear, and intelligible. The original act, *St.* 1783, *c.* 13, was designed apparently to prescribe a system of pilotage laws for the whole state. But, now, instead of uniformity, there are different regulations for the ports of Boston, Plymouth, Salem, Gloucester, Newburyport and the Merrimac river, for Provincetown, for the port of Fairhaven and New Bedford, and for the port of Nantucket, as distinct from the coasts and shoals of Nantucket. They are very essentially different in the mode of appointing and commissioning pilots; in making regulations for their government; and in establishing fees for their compensation. The various provisions, changes, and alterations on the subject, are embraced in about twenty-five statutes, including the revised statutes, some passed before and some since that revision. A list of all the statutes will be found in the note below.*

---

* List of statutes of Massachusetts, on the subject of pilotage : — 1783, *c.* 13, (general); 1783, *c.* 23, (Martha's Vineyard and Nantucket Shoals); 1783, *c.* 56, (Martha's Vineyard and Nantucket); 1785, *c.* 29, (Newburyport and Merrimac river); 1796, *c.* 85, (Boston); 1797, *c.* 13, (general); 1813, c. 164, (Salem); 1818, *c.* 125, (Boston) ; 1819, *c.* 45, (Boston); 1819, *c.* 155, (Vineyard sound and Nantucket shoals); 1826, *c.* 88, (New Bedford and Fairhaven); 1826, *c.* 104, (Boston) · 826, c. 114, (Salem); 1829, *c.* 2, (Boston) ; 1829, *c.* 37, (New Bedford and Fair-

The revised statutes have in many cases reconciled con·· flicting provisions, and brought into one harmonious whole a system of rules, which, if not directly conflicting with each other, were made up of various detached statutes passed at different times, and not always with a clear discernment of the bearing of each new enactment on the whole system; but even this careful revision failed to introduce order and method, or establish simplicity and symmetry, in the laws respecting pilots and pilotage. The commissioners seem to have done nothing more on this subject, than to have taken the existing statutes, variant and divergent as they were, and to have included in their report all those which seemed to them to be then in force; but the commissioners have not inserted in their report any note or comment explanatory of their views.

The question in the cases now before the court is, whether the plaintiffs, who claim to hold commissions as branch pilots, for the coasts of Nantucket and Martha's Vineyard and over Nantucket shoals, and who produce warrants to that effect, have an exclusive right to the pilotage of vessels, bound through the Vineyard sound, and over the shoals, and to the fees due thereon ; and whether, as a security for that right, they may offer their services to vessels so intending to pass, and if they are declined, can demand and recover pilotage fees, in the same manner as if the offer were accepted, and the ser· vices in fact performed.

This right to recover a compensation for services offered but not rendered, although in many cases a highly reasonable and proper one, as stated in former cases, *Commonwealth* v. *Ricketson*, 5 Met. 412, and *Martin* v. *Hilton*, 9 Met. 371, is a right not founded on the principles of the common law, and can be

haven) ; 1829, *c.* 42, (Boston); 1831, *c.* 6, (New Bedford and Fairhaven); 1834, *c.*10, (Boston) ; 1835, *c.* 90, (Newburyport and Merrimac river) ; 1835, *c.* 149, (Boston); Revised Statutes, *c.* 32, (general) ; 1837, *c.* 22, (New Bedford and Fairhaven); 1841, *c.* 45, (general); 1844, *c.* 168, (general) ; 1845, *c.* 187, (general); 1846, *c.* 243, (Nantucket) ; 1847, *c.* 150, (Provincetown); 1847, *c.* 279, (general); 1850, *c.* 164, (Nantucket). The last statute applies only to branch pilots for conducting vessels into or out of the *port* of Nantucket, and has no reference to vessels bound through the Vineyard sound, and over Nantucket shoals.

established only by statute. The difference between the case of pilots, and other persons whose services are necessary to navigation, arises from the nature of their employment. Their services are mainly required to bring vessels into port, foreigners and strangers wholly unacquainted with the coast, as well as homeward bound vessels having a partial acquaintance with the port, but not accurate enough for the occasion. Such vessels require the aid of a pilot at some distance from shore, and the fouler the weather and the more dangerous the navigation, the more they need the presence of the pilot. The object of the pilotage system, therefore, is, to provide for the appointment of men of known and competent skill and energy, to secure them a liberal compensation, and to encourage them to cruise off in all states of the weather, by securing to them an exclusive right to the emoluments of their hazardous but very useful office. To accomplish this, it is the object of the law to make the fees, taking fair weather and foul together, a reasonable and liberal compensation. These considerations apply more directly to vessels bound out of or into a particular port, and more especially the latter, but less to a part of the coast, along which they are to pass, in a passage from one port to another.

In order to determine, whether these plaintiffs have the right they assert, and it being conceded, that it must be founded on statute, we must look to the statutes, to ascertain, first, what authority they have under the statutes, and, secondly, what rights and privileges such authority confers upon them.

It is conceded, we believe, that there was no legislation on the subject of pilotage, prior to the revolution. No trace of it is found in the colony or province laws; and perhaps, as incident to the regulations of commerce and navigation, it may have depended upon orders of the crown, or other regulations of the home government.

The first statute, on the subject, passed after the adoption of the constitution, and which is everywhere referred to as the origin of these regulations in Massachusetts, was the statute of 1783, *c.* 13, passed July 11th, 1783. This act was general.

The first section authorized and requested the governor to appoint pilots, for the ports and coasts named, and amongst others, four, for the coasts of Nantucket, and ten, for the coasts of Martha's Vineyard.

· By the second section, it is provided, among other things, that every branch pilot, so commissioned and qualified, may take charge of any vessel drawing nine feet of water and upwards (coasting and fishing vessels excepted,) bound into any of the ports aforesaid, &c.

The third section limited the districts, for which the pilots were respectively assigned, and further directed the pilots for the coasts of Nantucket and Martha's Vineyard to take charge of any vessel on the coasts thereof, that should be bound over the shoals.

The fourth section required, that each of said branch pilots should keep one good decked boat, except the pilots for the coast of Nantucket; it directed the places at which these decked boats should be stationed; and, among others, four for the coasts of Martha's Vineyard, at Gay Head, four at Holmes's Hole, and two at Edgartown.

The fifth section provided for fixing the fees.

The sixth authorized any master, choosing to hazard it, to pilot his own vessel into port, paying the pilot of the port, who first comes on board, half pilotage.

The seventh and eighth sections contain regulations not material to be stated.

The ninth section provided, that if it should hereafter become necessary for any port or ports, not mentioned in this act, to have a pilot assigned them, &c., the governor should have authority to appoint accordingly.

The tenth section provided for the pilotage of outward bound vessels; and the eleventh, for the suspension or removal of pilots for mal-conduct.

I have thought it necessary to state the provisions of this act somewhat at length, because it is the origin and foundation of the system.

It will be observed, that the power given to the governor to appoint pilots, when necessary, for other ports, not mentioned

in the act, does not extend to Martha's Vineyard; because its harbors and coasts are mentioned in the act, and, of course, are excepted.

But it is more material to the present inquiry to consider, that these provisions, so far as they applied to Martha's Vineyard, were almost immediately found inapplicable, and not well adapted to the purposes intended, in consequence of which, they were first modified, and soon after wholly repealed.

The statute of 1783, *c.* 13, was passed in July; in October following, another act was passed, setting forth the difficulties attending the execution of the preceding act, so far as it affected the coasts of Martha's Vineyard, and attempting to provide a remedy, by requiring the several pilots, instead of keeping each a decked boat, to keep suitable row-boats, and further, requiring the pilots of Martha's Vineyard, jointly, to keep a vessel of about twenty tons for the like purposes.

The act thus modified, not being found in practice productive of the good effects thereby intended, so far as regarded the coasts of Martha's Vineyard, by an act of the same political year, *St.* 1783, *c.* 56, passed 16th March, 1784, both the preceding acts, so far as they respected the appointing and regulating of pilots and pilot-boats, were repealed, and no other provision having the same object in view was substituted.

It is highly probable, that the repeal of this part of the original statute was overlooked by the commissioners, in their revision of the statutes, as will probably appear, when we come to examine it. This repeal was noticed in the edition of the laws of 1822, in use previous to the revised statutes, in a foot-note appended to the title of the statute of 1783, *c.* 13. But as the repealed matter in the text was not printed in small type, like other repealed laws and parts of laws inserted in that edition, it probably, for that reason, escaped the attention of the commissioners.

From this review of the statutes, it seems manifest, that the only legislative provisions, respecting pilotage on the coasts of Martha's Vineyard, were repealed and wholly taken away, and there remained no provision for the appointment of pilots

or the regulation of pilotage there, until the passage of the act of 1819, hereafter mentioned. If it be said, that by the ninth section of the general act, the governor had power to appoint pilots, when necessary, for any other port or ports, and regulate their duties and fees, the answer is obvious, and has been alluded to, that the authority is limited to ports not mentioned in the act; but the coasts and harbors of Martha's Vineyard are mentioned and provided for in the act, and though such par-ticular provision is repealed, it still leaves these places within the exception. But if, by any construction or implication, such authority remained with the governor, it was taken away, so far as the Vineyard sound and pilotage over Nantucket shoals were concerned, by the act next to be considered, *St.* 1819, *c.* 155, passed 24th February, 1820.

The act thus referred to, *St.* 1819, *c.* 155, has a very important bearing upon the present question. Indeed, this act makes no provision for the appointment of pilots; but on the contrary, the whole purpose of the act is to establish the compensation of those who perform the service, where there is no agreement in writing.

The first section provides, that any person, who shall faithfully and skilfully pilot any vessel through the Vineyard sound, over Nantucket shoals, to her port of destination in Boston bay, or eastward thereof, shall receive certain rates of pilotage, enumerated in the act, depending on the vessel's draft of water, — the season of the year, — and the distance north or east of Cape Ann, at which the pilot is landed.

The second section provides, that the act shall not extend to any case, where an agreement in writing shall be made between the master or owner of a vessel, and the person who may undertake to act as pilot thereof, fixing any other rate of pilotage for his services.

The third section declares, that nothing contained in the act shall, in any way, affect any law respecting pilotage, then in force in any part of this commonwealth.

The last clause is a strong legislative declaration in support of the ground already taken, that after the second repealing act of 1783, there was no law in force respecting pilots

and pilotage of the Vineyard sound and Nantucket shoals. If there were, that act must have affected them, because it must have let other persons into competition and deprived them of any exclusive right. The words of this act seem to have been carefully chosen; it gives authority and secures an adequate compensation to *any person*, without regard to appointment or commission, to pilot *any vessel*, foreign or American, fisherman or coaster, without regard to tonnage, draft of water, or destination.

This act threw the business of this peculiar pilotage entirely open to all persons of competent skill; it authorized specific bargains for compensation, subject only to the condition, that they should be reduced to writing, so that a meritorious individual might not be left, after the service performed, at a distance from home and among strangers, without a certain and easy remedy. By authorizing the employment of any person, it gave the master a right to select, and necessarily excluded the claim of any one for services offered, but not accepted.

Before proceeding to consider the revised statutes, it may be well to pause and ascertain, if we can, the reasons and considerations of policy, on which these provisions were founded; and we think we may find them in the geographical position of the coasts and harbors of Martha's Vineyard, and the exigencies and habits of navigation connected with them. The harbors of Martha's Vineyard are rarely ports of destination, even for coasting vessels; but vast numbers of vessels resort there for shelter, to await a fair wind or favorable weather for passing the dangerous navigation of the sound, and the shoals around Cape Cod to places north and east of it. There is little occasion for decked boats, of suitable size and strength, to cruise off to meet inward bound vessels; hence, the first change in the general law was to dispense with these boats. Again, in carrying a vessel over the shoals, the pilot himself is carried so far north and east, that it is easier for him to continue on in the vessel to her port of destination, and return to his home across the state, than to leave the vessel, and return in a boat after crossing the shoals. But after his arrival in Massachusetts bay, he is regarded as a passenger, and ceases

to be regarded as a pilot, whether commissioned for another place or not. *Commonwealth* v. *Ricketson*, 5 Met. 412. The difference between such a pilotage, and the pilotage in or out of harbors, is quite manifest, and renders the use of pilot-boats comparatively unnecessary.

Again, when from the state of the wind or weather, any vessels in these ports of shelter need pilots, there are often a great number needing them, so that five or ten pilots, some of them absent as they must be, would fall far short of supplying the want; and as many other persons, inhabitants of the Vineyard as well as others, old experienced coasters, acquainted with that particular navigation, are competent to pilot vessels over the shoals, and as vessels are usually in port, under shelter, when the arrangement is made, it was thought most consistent with the safety of navigation and the interests of commerce, to permit masters to make their bargains and select a pilot, the law taking care only to secure the pilots their just compensation. It appears to us, therefore, looking at the probable purpose and policy as well as the literal provisions of these acts, that it was intended by the legislature, to exempt this particular navigation from a burden, highly proper and necessary to secure a safe entrance into and departure from those great ports and marts, to which ships resort for the purposes of commerce.

Thus the law stood, when the revised statutes went into operation. It is certainly difficult to put a satisfactory construction upon the Rev. Sts. *c.* 32; and it is for that reason, that we have thought it necessary thus to review the various materials from which they were taken, the better to understand them as a whole. If § 42 had stood alone, we could have had no doubt, that it was the intention of the legislature to reënact the statute of 1819, *c.* 155, and leave the law in regard to this pilotage as it stood before. But there is a clause in § 9, which seems to carry a different implication. It' provides that ten decked pilot-boats shall be kept at Martha's Vineyard and stationed as directed in the original act. This whole section seems to have been reënacted from *St.* 1783, *c.* 13, § 4, by the legislature, without being aware, that all that

part of it which related to the coasts of Martha's Vineyard, had been repealed. The original act had provided, that ten pilots should be appointed for the coasts of Martha's Vineyard, and then the clause requiring ten pilot-boats had a subject to which it could apply. But in this chapter of the revised statutes, the clause directing the number of pilots to be appointed is wholly omitted, and in the provisions for their appointment, no allusion is made to the coasts of Martha's Vineyard. The provision, therefore, that ten decked boats should be kept at Martha's Vineyard, as a new enactment, commencing with the revised statutes, appears to be wholly inoperative; because no provision is made for the appointment of pilots, to provide and keep such boats, and because another distinct and complete provision is made for the Martha's Vineyard pilotage, through the sound and over Nantucket shoals. It is not to be presumed, without the clearest and strongest evidence, that the legislature intended to establish, as a new regulation, the burdensome requisition of keeping ten decked boats, which had been specially dispensed with more than fifty years before, and probably before it was even carried into execution, and because it was found not adapted to accomplish the purposes intended by the legislature. Is it not, rather, to be attributed to inadvertence, in considering that it remained unrepealed as a part of the original system, which they obviously meant to continue as it was? But whatever may have been the occasion of its reenactment in this chapter, it can have no effect, because there is no corresponding provision, as in the former act, for the appointment of pilots for it to act on.

The only plausible argument, to maintain the authority of the governor, to appoint pilots for Martha's Vineyard, under the revised statutes, is found in § 5, the first and general clause on the subject, which authorizes the appointment of one or more suitable persons, to be pilots for the several harbors and coasts of this state, except those for which special provision is hereafter made in this chapter. But the same chapter, § 42, does make provision, not indeed for the appointment of pilots, but for the pilotage through the Vineyard sound and over

32 *

Nantucket shoals, by providing that any person may pilot any vessel, &c., and securing them a compensation when not agreed in writing, reënacting all the provisions of the statute of 1819, c. 155.  The same reasons of policy and fitness apply to this statute, as to that.   The provisions of c. 32, §§ 5 and 42, were made at the same time, to go into operation together, and both must have their full effect, if they can.   As these are both parts of one and the same act, the one is not repealed by the other, though one particular provision may be modified or restrained by the other, that both may have effect.   Now §§ 5, 10, and 12, authorize the governor and council to appoint pilots for coasts and harbors, fix their fees, and make regulations, except for those places for which special provision is made. This power, being general in its nature, is to be construed in connection with every other part of the statute, and as special provision is made for the pilotage of the Vineyard sound and Nantucket shoals, they are as much exempted from the operation of these general powers, as Newburyport or Boston.

But further, the general power conferred by §§ 5, 10, and 12, if they could be construed to extend to Martha's Vineyard, would be inconsistent with the particular provisions of §.42. This provides that any person, who shall faithfully pilot any vessel, through the Vineyard sound, over Nantucket shoals to her port of destination in Boston bay or eastward thereof, shall receive the following rates of pilotage, &c., with a proviso not to extend to a case where an agreement in writing shall be made, with a person who may undertake to act as pilot of such vessel, fixing any other rate of pilotage.

This section recognizes the right of any person to act as pilot; the right of the shipmaster to employ any person in this service as pilot; secures compensation to such person as pilotage, by a written agreement, or the rule of the statute.   This is inconsistent with the right of a pilot appointed under the § 5 to demand the fees provided for in § 10, for his services, or the compensation under § 12, for services of a pilot offered but not accepted.   They can only be reconciled by construing the statute to hold, that these sections have no application to that .eculiar pilotage.   Upon such a construction of this chapter

of the revised statutes, both the provisions, the more general and the more specific, may have their appropriate legal effect, and it seems to us to be the true construction.

It may be said, indeed it was stated in the argument, that upon this construction, a commission or warrant to pilot vessels over the shoals would be of little value to the holder. A copy of one of these commissions was produced and made part of the case, and it seems that these commissions have been issued since the revised statutes. We are not aware, on what legal authority they have been issued. Whatever such authority may be, the court are of opinion, that the law does not authorize the governor and council, by such appointment, to confer an exclusive right to this pilotage, or to determine and establish fees, or more especially, under § 12, to demand and recover, of a master or owner of a vessel bound through the sound and over the shoals, pilotage fees for services tendered and not accepted.

We are aware of the case of *Smith* v. *Swift*, 8 Met. 329, in which it was assumed, that the commission to the plaintiff in that case, as a pilot, was duly issued. It was conceded by the defendant that it was duly issued, and the warrant was taken as evidence of the authority of the pilot. But the claim for the plaintiff was placed on the ground, that the plaintiff was commissioned as a pilot, for the ports of Falmouth, to one of which the defendants' inward bound whaling ship was bound, as her place of ultimate destination. The decision for the plaintiff, in that case, is not inconsistent with the present. Falmouth or the port of Falmouth not being specially provided for in the Rev. Sts. *c.* 32, it was perfectly competent for the governor to appoint the plaintiff in that case, and fix his fees. It appeared by the commission produced, that he had so appointed him, as a pilot for the port of Falmouth; and although he was also named as a pilot, on Martha's Vineyard and over Nantucket shoals, that did not invalidate his title as a pilot at the port of Falmouth, on which title he recovered.

One of these suits is brought against the master, and the other against the owner, of the vessels offered to be piloted by the plaintiffs, respectively, and one question was, which was pro-

per, or whether he may not proceed against either, as in case of mariner's wages. But as the court are of opinion, that neither is liable, in these cases, it has not been necessary to consider that question. *Judgment for the defendants.*