## No. 2253.—BABBITT, GOODE & CO. v. THE SUN MUTUAL INSURANCE COMPANY.

The steamboat Mars took on board at New Orleans, in 1861, a cargo of sugar consigned to Babbitt, Goode & Co., at Cincinnati, Ohio. The sugar was insured in favor of the consignees in the office of the Sun Mutual Insurance Company of New Orleans. When opposite the town of Helena, on the Mississippi river, the boat was fired at by a cannon shot and brought to the bank; a mob took possession of the boat and cargo of sugar, which became a total loss to the owners. The insurance company resist the payment of the policy on the grounds:

*First*—That the owners of the cargo not having made an abandonment and the cargo not having been an immediate total loss, they were not entitled to recover on that account. Held—That so far as the owners were concerned, from the moment the sugar was taken possession of by the mob, it became a total loss to them, and no act of abandonment on their part was necessary to entitle them to recover on the policy.

*Second*—That the taking of the sugar at Helena was a capture or detention by the enemies of the United States, and that such capture or detention was not among the perils insured against. Held—That it having been established by the testimony that the persons at Helena who took forcible possession of the sugar were not acting under any legally constituted authority of any State or government whatever, but were acting simply as a mob, the underwriters could not avail themselves of this defense to escape liability under this state of facts.

*Third*—That the underwriters were not liable because the taking of the sugar, under the circumstances, is not included in either the special or general words of the peril clause of the policy. The perils are as follows: "Of the rivers, fires, rovers, assailing thieves and all other perils and losses and misfortunes that have or shall come to the hurt, detriment or damage of the said goods and merchandise or any part thereof by reason of the dangers of the river." Held—That the taking of the sugar by the mob at Helena was covered by the general terms of the peril clause in the policy; that while the mob at Helena could not properly be classed as assailing thieves, because the evidence did not establish that it was done *animo furandi*, yet the acts were of such a character that, if not reducible from the special words of the policy, they were clearly included within the general words at the end of the peril clause.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley, J. Hornor & Benedict,* for plaintiffs and appellees. *J. A. Maybin, Leovy & Monroe,* for defendant and appellant.

HOWE, J. Action upon a river policy of insurance on seventy-five hogsheads of sugar, at and from New Orleans to Cincinnati, on steamboat Mars, dated April 19, 1861. The answer admits the execution of the policy, denies that the plaintiffs owned or were interested in the property insured, and denied generally the liability of the defendant. There was judgment for plaintiffs, and defendant appealed.

*First*—The interest of plaintiffs in the goods covered by the policy is fully established and is not contested in this court.

*Second*—The liability of defendant is alleged to be for a total loss, under the following circumstances: On the twenty-fourth April, 1861, as the boat was passing the town of Helena, Arkansas, a mob of citizens fired a cannon across her bow, compelled her to land, took possession of her and her cargo and kept possession. The sugar of plaintiffs thus became a total loss.

The defendant contends that there has been no abandonment by plaintiffs, and that an abandonment within a reasonable time was essential to make the loss total. But we think that whatever may have been the exact nature of the seizure or taking of the goods by the mob, its effect was to cause the subject matter of the insurance to be totally lost to the owners. Twelve days after, the State of Arkansas seceded and at once became involved in the war of the rebellion. The plaintiffs, residing at Cincinnati, became cut off from all practical communication and lawful relation with both the defendant, in New Orleans, and the people of Helena, in Arkansas, and the sugar soon disappeared, either by theft or tortious conversion. In the spring of 1862 communication between Cincinnati and New Orleans became possible by the occupation of the latter place by the national forces; but communication between New Orleans and Arkansas was, for the same reason and at the same time, cut off. This suit was began in February, 1864. An abandonment in the usual form would, at all times, have been an idle ceremony, of no benefit to defendant. Mullett *v.* Shedden, 13 East. 304; Mellish *v.* Andrews, 15 East. 13.

But, furthermore, the demand for payment as for a total loss made early in 1864 amounted to an abandonment (Cassidy *v.* Louisiana Insurance Company, 6 N. S. 422), and for all practical purposes was as useful to defendant as if made the moment New Orleans was reoccupied by the United States forces.

*Third*—The next defense urged is that the taking of the sugar was a capture or detention by enemies of the United States, and that such capture or detention not being a peril insured against, the defendant is not liable. We can not assent to this view. The persons in Helena by whom the sugar was seized, " some of it sold and some carried to Little Rock," are proved to have been citizens of the place, acting under no pretext of authority, but simply as a mob. It may be supposed, from the record, that they made the seizure because the vessel and cargo were believed by them to belong to persons in Cincinnati, but the reason of the outrage does not necessarily determine its character. The motive is one thing; the authority set up another. They neither represented nor claimed to represent any State or government, real or imaginary, actual or pretended. The cases of Fifield *v.* Pennsylvania Insurance Company, 47 Penn. 166; Dole *v.* New England Insurance Company, 6 Allen 373; and Dole *v.* Merchants'

Mutual Insurance Company, 51 Maine 465; and Mauran *v.* Alliance Insurance Company, 6 Wallace 1, where the risk of capture was excepted and the taking by Confederate cruisers was held to be a capture, are, therefore, not in point. The case of Nesbitt *v.* Lushington, 4 Term 783, more nearly resembles this. There the vessel being forced by stress of weather into Elly Harbor, coast of Ireland, and there being a famine at the time, the people came on board and took control of the ship from the captain and crew by violence, and weighed her anchor, by which she drove on a reef of rocks and was stranded. They compelled the captain to sell the corn on board at three-fourths its invoice price, except ten tons lost by stranding. Lord Kenyon said that the case did not fall within the meaning of "arrests, restraints and detainments of kings, princes and people;" that "people" meant "the ruling power of the country," which this mob was not. Mr. Justice Buller was of the same opinion and seems to have considered the acts of the mob as "wrongful acts of individuals," which are usually described as perils of "pirates, rogues and thieves."

*Fourth*—It is contended by the defendant, lastly, that it can not be held liable because the taking is not included in either the special or general words of the peril clause of the policy. The perils are as follows: "Of the rivers, fires, rovers, assailing thieves, and all other perils and losses and misfortunes that have or shall come to the hurt, detriment or damage of the said goods and merchandise or any part thereof by reason of the dangers of the river."

The judge *a quo* thought that this mob of citizens were assailing thieves, but we may doubt the safety of such a conclusion, for it is not clear that they took the property *animo furandi*. But their acts may still fall under the general words of the peril clause. It is well settled that these general words do not extend the scope of the policy so as to include perils beyond and entirely different from those specially enumerated. But it is equally well settled that it has some effect in embracing risks of a character similar to those specially insured against *ejusdem generis.*

But the defendant urges that the last words of the general clause, "by reason of the dangers of the river," restrain its operation to one alone of the previously enumerated risks, namely, perils "of the rivers." This, in effect, is to say that the defendant insured against "the perils of the rivers *and all other* perils of the river," for that is what the general clause, thus interpreted, amounts to in brief. Such a construction does not seem reasonable or necessary. On the contrary, it would seem the defendant intended by its language to say that it took certain risks and all others *ejusdem generis* that might occur during the navigation of the river from New Orleans to Cincinnati.

It remains, therefore, to inquire if the acts in question, though not done *animo furandi*, were *ejusdem generis* with those specially insured against, viz: the acts of "rovers and assailing thieves."

In Naylor *v.* Palmer, 8 Exchequer 750, where the passengers, who were coolies, rose upon the crew and with violence seized the vessel, the court, Chief Baron Pollock, said: "The act of seizure of the ship and taking it out of the possession of the master and crew, by the passengers, was either an act of piracy and theft, and so within the express words of the policy, or, if not of that quality because it was not done *animo furandi*, it was a seizure *ejusdem generis* analogous to it or to barratry of the crew, falling within the general concluding words of the perils enumerated by the policy." This case having been taken up to the Exchequer Chamber, was affirmed, the court, Coleridge, B., saying that the acts of the passengers were "either direct acts of piracy or acts so entirely *ejusdem generis* that if not reducible to the special words of the policy, they were clearly included within the general words at the end of the peril clause."

Similar language may be applied in this case to the acts which caused the total loss to the plaintiffs of their goods. They may not be the acts of "rovers and assailing thieves," for these imply the *animus furandi*, but the taking was *ejusdem generis;* it was without any pretense of sanction by even a pretended authority, and the evidence shows it was accompanied with acts of robbery, the bar of the boat being not unnaturally a special object of plunder. We conclude, therefore, that this taking was a peril included in the general words at the close of the peril clause, and that there is no error in the judgment.

Judgment affirmed.

Rehearing refused.