WILLIAM A. FAY *vs.* FRANK H. HASKELL, administrator.
FRED L. PERKINS *vs.* SAME.

Essex.    November 1, 2, 1910. — January 3, 1911.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Executor and Administrator.    Insolvent Estates of Deceased Persons.    Words,*
    "Further assets," "New assets."

R. L. c. 142, § 10, in the chapter relating to insolvent estates of deceased persons, provides that a creditor, who does not present his claim for allowance to the commissioners appointed by the Probate Court or, if no commissioners are appointed, to the court itself within the time prescribed by that court not exceeding eighteen

months from the original appointment or order, shall be barred from recovering such claim, but that "if further assets of the deceased come to the hands of the executor or administrator after the decree of distribution, the claim may be proved, allowed and paid," as provided in that chapter for contingent claims. *Held*, that the "further assets" which a belated creditor may reach under the provision above quoted are the same as the "new assets" which such a creditor may reach under R. L. c. 141, § 11, upon a claim against the estate of a person who died solvent.

The term "further assets" in R. L. c. 142, § 10, like the term "new assets" in R. L. c. 141, § 11, does not include property with which the executor or administrator has been charged in his inventory or otherwise or the property into which such property or any part thereof has been changed, nor does it include the natural increment of such property in the way of interest or otherwise.

Under R. L. c. 142, § 10, where a creditor of the insolvent estate of a deceased person is seeking to show "further assets" in the hands of the administrator of his estate after the decree of distribution, he is not entitled to treat as such assets the balance from a former account of the administrator nor the proceeds in the hands of the administrator of a judgment recovered against a savings bank for a surplus remaining from the foreclosure of a mortgage made by the intestate, nor a sum received by the administrator for tools which had belonged to the intestate and had been included in the inventory, nor money received by the administrator as interest on a deposit in a national bank, nor damages recovered for the breach of a contract to purchase from the intestate a certain note and mortgage, although the note and mortgage had been inventoried as worthless, each of the assets enumerated being the product of a change in an original asset and not "further assets."

In an appeal to the Superior Court from a decree of the Probate Court a creditor of the insolvent estate of a deceased person sought to show "further assets" in the hands of the administrator of his estate after the decree of distribution. A supplementary account of the administrator filed after the decree of distribution showed his receipt of certain sums from the sales of interests in two parcels of land. In neither the first account of the administrator nor in his "second and final account," filed and allowed nearly four years later, were these interests in land or the proceeds from their sale included. The administrator testified that he knew that these parcels of land belonged to the estate of his intestate some two or three months after filing the inventory and that for a long time before the decree of distribution he had been trying to negotiate a sale of them to prospective purchasers. The administrator asked the judge of the Superior Court to rule (1) that the finding should be for the administrator, (2) that after the decree of distribution no "further assets" ever came to the hands of the administrator to which the creditor became entitled, and (3) that all the property that came to the hands of the administrator after the decree of distribution was represented in the inventory filed before the decree of distribution or was known by the administrator before that decree to be property of the. intestate and therefore was not "further assets" to which the creditor was entitled. The judge refused to make any of these rulings, and found for the creditor. On exceptions alleged by the administrator, it was *held*, that, although, if the statement of the administrator in his testimony was correct, neither the interests in land nor the proceeds from their sales were "further assets," yet the judge might not have believed this testimony of the administrator, and might have concluded from all the evidence that knowledge of the interests in these two parcels of land did not come to the administrator until

long after the expiration of the two years' limitation from the time of his appointment, and that under such a finding the sums thus received from the sales were "further assets"; that, therefore, neither the first nor the second ruling asked by the administrator should have been given, nor the third, because it assumed that the testimony of the administrator was true.

TWO APPEALS to the Superior Court from the disallowance by the Probate Court for the county of Essex of claims presented to that court under R. L. c. 142, § 10, for allowance against the estate of Charles C. Blanchard, late of Lynn, deceased insolvent.

The appellants did not present their claims for allowance within the time allowed by the Probate Court for presenting claims under the statute, but contended that they were entitled to share in certain sums in the hands of the administrator upon the ground that those sums were "further assets" which had come to the hands of the administrator after the decree of distribution within the meaning of § 10.

In the Superior Court the appeals were heard together by *Bell*, J.

The following was all the material evidence in both cases:

By a decree of the Probate Court for Essex County made on July 17, 1905, Frank H. Haskell was appointed administrator of the estate of Charles C. Blanchard, and on that date gave a proper bond for the discharge of his trust and also gave a proper notice of his appointment. The administrator, personally, was a creditor of the deceased for a large amount. On July 12, 1906, the administrator represented the estate insolvent and the Probate Court gave creditors six months from July 12, 1906, to prove their claims before that court. Due notice was given to all creditors, and the time afterwards was extended to April 4, 1907. The appellant Perkins testified that at the time when it was alleged that the notices were sent out and for a long time thereafter he was dangerously ill and did not receive or know of the notice. The administrator's first account was allowed on April 25, 1907, and on May 29, 1907, the court ordered the distribution of dividends to the creditors who had proved their claims, and these dividends were paid. The estate was insolvent, there not being sufficient assets to pay in full the creditors who had proved their claims. The second and final account of the ad-

ministrator was filed on April 8, 1909, and was allowed on May 3, 1909, the balance of that account charged to the administrator being $436.83. That account showed as charged to the administrator the balance of the first account, amounting to $254.43, also $648.51, the proceeds of a judgment recovered against the Lynn Institution for Savings for a surplus in its hands upon the foreclosure of a mortgage upon real estate of Blanchard, which was foreclosed after the death of Blanchard, the surplus being paid over to the administrator on March 3, 1908, also the proceeds of a judgment recovered by the administrator against one Wilson for damages for the breach of an agreement made with the administrator to purchase a note and mortgage which belonged to Blanchard made by the Lynn and Boston Steamboat Company. The amount of this judgment was $49.40, which was paid over to the administrator on April 6, 1909. There was also $45.81 interest on money on deposit in the Manufacturers' National Bank of Lynn, which represented in part interest on sums deposited to pay dividends and interest on the above specified sums, also the sum of $3 for tools, the two last sums of money having been paid to the administrator on April 6, 1909. The inventory filed in the Probate Court listed land and buildings, 60 Farragut Road, Swampscott, which was the parcel of real estate upon which the Lynn Institution for Savings held the mortgage in question, and from the sale of which on foreclosure the sum of $648.51 surplus accrued. The inventory also contained the following items of personal property: " Lumber, machinery, office furniture, tools, engine, boiler," appraised at a lump sum of $3,911.40. It also contained the following item: " Bills receivable, value unknown." It also contained the following item: " Mortgage on Lynn and Boston Steamboat Company, $1,746.26 " (being the mortgage before referred to). Schedule B of the administrator's first account contained as one of the items for which the administrator asked to be allowed the following: " Mortgage on Lynn and Boston Steamboat Company not collected, $1,746.26," being the mortgage before referred to. A supplementary account filed on June 21, 1909, showed in addition to the foregoing sums the sum of $15, received in May, 1909, from the sale of some interest in land on Bloomfield Street in Lynn, and a further sum of $75,

received on June 10, 1909, from the sale of some interest in land on Reed Street in Lynn. Neither of these parcels of land or any interest therein was shown in the inventory or in either account filed before the supplementary account, but the administrator testified that he knew that these parcels belonged to his intestate as early as the autumn of 1905, some two or three months after filing the inventory, and that for a long time before the decree of distribution he had been endeavoring to negotiate a sale of them to prospective purchasers. The inventory was filed on September 7, 1905, and the administrator charged himself with the personal property in the inventory in his first account. Blanchard at the time of his decease was indebted to the appellant Perkins in the sum of $1,211.51, and was indebted to the appellant Fay in the sum of $84.70. Perkins's claim was first filed in the Probate Court on May 1, 1909, and Fay's claim was first filed in that court on May 20, 1909. On August 5, 1909, both of these claims were presented to the Probate Court for allowance, the appellants alleging that they were entitled to share in the above named sums, or some of them, by reason of the sums being further assets, but the court decreed that these sums were not further assets within the statute, and disallowed the claims. Perkins and Fay appealed from the disallowance of their claims.

In the Superior Court the appellee asked the judge to make the following rulings in each case :

1. That upon all the evidence the finding should be for the appellee.

2. That after the decree of distribution no "further assets" ever came to the hands of the administrator to which the appellant became entitled.

3. That all the property that came to the hands of the administrator after the decree of distribution was represented in the inventory filed before the decree of distribution was made or was known by the administrator before that decree to be property of the intestate, and therefore was not "further assets" to which the appellant was entitled.

4. That the appellant was not entitled to prove his claim after April 4, 1907, unless "further assets" came to the hands of the administrator.

The judge refused to give the first three of the rulings thus requested but gave the fourth, and found for the appellant in each of the cases. The appellee alleged exceptions.

*J. C. Batchelder*, for the appellee.

*S. H. Hollis*, for the appellant Fay.

*A. B. Tolman*, for the appellant Perkins, submitted a brief.

HAMMOND, J. These are two appeals to the Superior Court from the disallowance by the Probate Court of claims presented against the insolvent estate of one Blanchard, deceased, under R. L. c. 142, § 10. Neither appellant presented his claim within the time prescribed by the Probate Court, but each contended that he was entitled to share in certain funds in the hands of the administrator, upon the ground that these funds were " further assets " which had come to the administrator's hands after the decree of distribution within the meaning of that section. At the trial in the Superior Court, without a jury, in each case the judge, at the request of the appellee, ruled that " the appellant was not entitled to prove his claim . . . unless ' further assets ' came to the hands of the administrator " ; and having so ruled, found for the appellant. Under the ruling the general finding necessarily implies that the judge found there were such further assets; and the only question is whether upon the evidence such a finding was warranted.

The section of the statute referred to relates to the proof of claims against the estate of a deceased person which has been duly represented to be insolvent, and reads as follows : " A creditor who does not present his claim for allowance in the manner herein provided [that is to the commissioners appointed by the Probate Court, or to the court, if no commissioners are appointed, within the time prescribed by that court] shall be barred from recovering the same; but if further assets of the deceased come to the hands of the executor or administrator after the decree of distribution, the claim may be proved, allowed and paid as provided in this chapter for contingent claims."

What is meant by the term " further assets " as used in this section ? For more than two centuries and a quarter there has been in this jurisdiction a similar provision as to the right of a creditor of the insolvent estate of a deceased person to present his claim after the time prescribed by the court. Such a

creditor was debarred under the colonial laws unless he could
" find some other estate of the deceased not found out before, and
put into the inventory "; Mass. Col. Laws, (Whitmore's ed.)
250; under the provincial laws, unless he could find "some
further estate of the deceased not before discovered and put
into the inventory "; Prov. St. 1692–93, c. 16; 1696, c. 8; 1 Prov.
Laws, 48, 251; and under the laws of the Commonwealth,
unless he should " find some other estate of the deceased, not
inventoried or accounted for by the executor or administrator
before distribution." St. 1784, c. 2. In Rev. Sts. c. 68, § 20,
the phrase is " unless further assets of the deceased shall come
to the hands of the executor or administrator, after the decree
of distribution " ; and such has been the form ever since. Gen.
Sts. c. 99, § 21. Pub. Sts. c. 137, § 10. R. L. c. 142, § 10.

It is argued by the appellee that the term " further assets "
as used in the section under consideration means in substance
the same as " new assets " in R. L. c. 141, § 11, and that under
the law interpreting the latter term none of the assets shown
by the evidence were further assets. It is argued by the appel-
lants that by the Revised Statutes a change was made in the
law and that now " ' further assets ' mean and can only mean
any money available for dividends which comes to the hands of
the administrator after the decree of distribution." The con-
tention is thus stated in their brief: " In other words, prior to
the Revised Statutes ' further assets ' were limited to such
further assets as should be found by the creditor himself, and
which had not been inventoried or accounted for, but since the
Revised Statutes the Legislature by cutting off the qualifying
words ' not inventoried or accounted for ' showed clearly that
thenceforth ' further assets ' meant simply any additional assets
from which the administrator could pay a dividend." Accord-
ingly, as they claim, cash coming to the hands of the adminis-
trator after the decree of distribution, even although it be the
proceeds of land or other property named in the inventory but
sold after the decree, may be regarded as further assets.

Rev. Sts. c. 68, § 20, was enacted in the precise form drafted
by the commissioners, and while they made upon that section a
note of considerable length, there is nothing to indicate that by
the verbal changes in the description of the kind of assets which

would let in a belated creditor there was any intention to change in that respect the law as it had previously existed under St. 1784, c. 2.

With respect to our procedure for the enforcement of claims against the estate of a deceased person, there is a marked difference, depending upon whether the estate is solvent or insolvent. In the former case the creditor whose right of action has accrued may proceed at common law; in the latter he cannot. In the former he is barred unless the action be brought within two years from the appointment of the administrator; in the latter he is barred unless he present his claim to the Probate Court or commissioner within the time prescribed by the court, which time cannot exceed eighteen months. In each case the provision as to time is in the nature of a statute of limitations. But in either case there is a contingency under which the bar may be removed to a certain extent. Where the estate is solvent, the contingency is that new assets have been received by the administrator after the expiration of two years from the time of his giving bond (R. L. c. 141, § 11), and, where the estate is insolvent, it is that further assets have come into the administrator's hands after the decree of distribution. R. L. c. 142, § 10. In each case the bar, unless thus removed, is absolute at law. The remedy in equity provided for in R. L. c. 141, § 10, is not material to this discussion. More briefly stated, the general framework of our procedure for the enforcement of claims against the estate of a deceased person, whether the estate be solvent or insolvent, is that a creditor whose right of action has accrued shall within a certain specified time take legal steps to enforce his claim; and that if he fails so to do he shall be forever barred unless, in the case of a solvent estate, " new assets," or, in that of an insolvent estate, " further assets " have come to the hands of the administrator. Where in either case the belated creditor is barred, the surplus property does not go to the administrator as his own, but, when the estate is solvent, to the heirs at law; and when it is insolvent, to the creditors who have proved their claims within the time specified. There is no reason why there should be any distinction as to the respective rights of belated creditors in these two kinds of estate. Substantial rights ought not to depend upon the statutory course of procedure. In view of

these considerations we are of opinion that the kind of assets which a belated creditor may reach under R. L. c. 141, § 11, is the same as that which such a creditor may reach under R. L. c. 142, § 10. "New assets" and "further assets" are substantially the same. Such an interpretation of these terms works uniformity in the principles upon which the rights of creditors of the estates of deceased persons depend and does equal justice to both classes of creditors.

The cases in which this court have considered the statutory provision on this matter so far as respects insolvent estates are very few, and they throw little if any light upon the precise question before us. In *Johnson* v. *Libby*, 15 Mass. 140, it was said by Parker, C. J., that "we can hardly think that the fact of a judgment, recently recovered by the heirs of the intestate, for land to which he had lost his right of entry, can be considered as the discovery of estate not inventoried or accounted for by the administratrix." In *Ostrom* v. *Curtis*, 1 Cush. 461, it was said by Shaw, C. J., that the question whether further assets have come to the hands of the administrator "may be a very difficult question to decide."

The phrase "new assets" occurring in statutes relating to solvent estates has received much more attention. Property recovered by an administrator which was fraudulently conveyed by the intestate has been regarded as new assets. *Holland* v. *Cruft*, 20 Pick. 321. *Welsh* v. *Welsh*, 105 Mass. 229. And so as to a reversionary interest in property conveyed to trustees for the benefit of creditors, which at the time of the debtor's death and long afterwards was supposed to be of no value, and although known to the administrator is not included in the inventory of the estate, but which after eleven years turns out to be more than sufficient to pay the debtor's claim. *Quincy* v. *Quincy*, 167 Mass. 536. In this case Holmes, J., says that the section of the Public Statutes (then Pub. Sts. c. 136, § 11, now R. L. c. 141, § 11) "is a difficult one to construe. It cannot be taken to extend to all cases where tangible property first is received by the executor or administrator after two years, even if not included in the inventory. . . . But, on the other hand, the section must be given a serious meaning, and it would be made almost illusory if construed not to apply to any case where the right

was vested at the debtor's death." See also *Copeland* v. *Fifield*, 180 Mass. 223.

On the other hand it is held that a mere change in the form of the property does not make "new assets." This principle was applied in *Sturtevant* v. *Sturtevant*, 4 Allen, 122, where the administrator sold out the interest of his intestate in a partnership which had been inventoried, and took in payment notes which were collected more than two years after his appointment; in *Chenery* v. *Webster*, 8 Allen, 76, and in *Alden* v. *Stebbins*, 99 Mass. 616, where land which had been inventoried was sold by the administrator after two years from the time of his appointment under a license of the Probate Court to pay debts; and in *Bradford* v. *Forbes*, 9 Allen, 365, where after two years the executor recovered judgment upon a suit begun by his testator. Striking illustrations of the application of this principle may be found in *Veazie* v. *Marrett*, 6 Allen, 372; *Robinson* v. *Hodge*, 117 Mass. 222, and *Gould* v. *Camp*, 157 Mass. 358. In *Veazie* v. *Marrett*, which was a suit by a belated creditor against an administrator *de bonis non*, it was held that money received by the defendant from a surety upon the bond of the original administrator was not new assets. The ground of the decision was stated by Hoar, J., in the following language: " The original administrator included in the inventory all the estate of the intestate which has ever been discovered. For a part of the estate so inventoried he failed to account, and a suit was brought upon his bond. The property now in the hands of the defendant was received by him from a surety on the bond, in satisfaction of that suit. It is therefore merely the proceeds of the estate embraced in the first inventory, and belongs to the creditors or persons entitled to distribution of the estate not needed for the payment of debts and charges of administration when the plaintiff's claim was barred." In *Robinson* v. *Hodge*, 117 Mass. 222, certain patent rights were inventoried; and it was held that money received by an administratrix after two years from that time from the patent rights, whether as royalties or as proceeds of the sales of rights, was not "new assets." Wells, J., in giving the opinion said: " We infer from the report, and it was so assumed by the argument on both sides, that this money arose from sales or contracts made by the adminis-

tratrix, or, at least, that it accrued after the decease of the intestate, and that it arose from the inventions mentioned in the inventory. It was the product of the property included in the inventory; and, in the same sense as are the income of stocks and the increase of live animals, it was embraced as a potentiality in the valuation of the patent for the invention. The new form which the property assumed or was converted into did not make it 'new assets' in the sense of the statute. *Sturtevant* v. *Sturtevant*, 4 Allen, 122." In *Gould* v. *Camp*, 157 Mass. 358, the facts are somewhat complicated and will not here be stated. Holmes, J., said: "It is impossible . . . to lay down the universal principle that everything omitted from the inventory by accident or any cause, no matter what, is 'new assets.' . . . Notes and choses in action generally are assets. . . . The chance of getting the proceeds would be 'embraced as a potentiality in the valuation. *Robinson* v. *Hodge*, 117 Mass. 222, 225.'"

It is impossible to give in advance a general definition of either of these terms which shall specifically embrace all the cases properly within it and exclude all others; and the cases must be settled as they arise. Generally, however, it may be said that neither term includes property for which the administrator has been charged in his inventory or otherwise, or the property into which the same or any part thereof has been changed, or the natural increment of such property in the way of interest or otherwise.

Applying these principles to the case before us, it is plain that neither the balance of the former account, nor the proceeds of the judgment recovered against the Lynn Institution for Savings, nor the sum received for tools, nor the money received as interest on the deposit in the Manufacturers' National Bank were further assets. As to the $49.40 recovered against Wilson, there is more doubt. We understand that this was recovered as damages for the breach of a contract to purchase the note and mortgage of the Lynn and Boston Steamboat Company, which note and mortgage were inventoried as worthless. Had the contract for the sale been carried out the proceeds thereof would not have been new assets, and we think that notwithstanding some technical difficulties the sum received for breach

of the contract may be regarded as in substance a change so far as it goes in the original asset and was not further assets.

As to the sum received in May, 1909, from the sale of an interest in the land on Bloomfield Street and the sum received June 10, 1909, from the sale of an interest in land on Reed Street, there is considerable difficulty. It does not appear at what precise time the sales were made. In the absence of anything to the contrary it is fair to assume that each sale was made at or about the time the proceeds thereof were received. The " second and final account " of the administrator was filed on April 8, 1909, and was allowed on May 8, 1909, nearly four years after his appointment. In neither of these accounts were either of these parcels of land or the proceeds from the sale of them included. The administrator testified that he knew that these parcels belonged to his intestate as early as in the autumn of 1905, some two or three months after filing the inventory, and for a long time before the decree of distribution he had been endeavoring to negotiate a sale of the same to prospective purchasers. If this statement of the administrator is correct, then, although the interest in these lands was not inventoried, yet well within the two years he had them in his control and neither they nor the proceeds of the sale of them were " further assets." But the judge may not have given credit to this testimony of the administrator, and from all the evidence he may have found that knowledge of the interest in these two parcels of land did not come to the administrator until long after the expiration of the two years from the time of his appointment. Under such a finding the sums were " further assets."

It follows that neither the first nor second requests should have been given. And so of the third. It assumes as true the testimony of the administrator.

*Exceptions overruled.*