Hibbard, P. J.
The parties hereto have briefed and argued but one point. The issue is therefore narrowed to one question. The facts as disclosed in the report succinctly stated are as follows:
The action is of contract brought upon alleged agreement between the plaintiff and the intestate. The writ was dated March 16,1935, and returnable to the District Court of Holyoke on March 30, 1935.
*102 On August 16, 1933, Anna Hennessey was appointed administratrix of the deceased Michael Hennessey by the Probate Court for the County of Hampden. She filed a bond which was approved August 24,1933, and gave notice of her appointment by posting the same as required by law on September 2, 1933. On November 22, 1933, a petition for her removal as administratrix was filed in said Probate Court. The petition alleged that she claimed as her own and had not included in the inventory certain bank deposits amounting to more than seven thousand dollars, which deposits were alleged to be the property of the intestate, Michael Hennessey. On December 13, 1933, Anna Hennessey filed a stipulation in said Court that she would resign and on December 21st filed her resignation. This resignation was accepted on March 14, 1934, and on the same date the defendant, Francis T. Scanlon, was appointed administrator d. b. n. and qualified by filing a bond which was approved March 29, 1934. He filed an inventory showing no real estate and under personal property there appears the following:
“Item 1: Cash on deposit in New South Wales, Australia, £225.6.0”.
No other papers have been filed in the estate. In May 1934 the present defendant as administrator d.b.n. brought ’suit against Anna Hennessey for the amount of said bank deposits. Prior thereto an action had been begun by a sister of the deceased and of the said Anna Hennessey against the latter in which claim was made to a part of said bank deposits. The larger part of said deposits were withdrawn from the banks by the said Anna Hennessey. On November 15, 1935, the Probate Court for said County authorized the defendant Scanlon to compromise his claim against Anna Hennessey for the sum of $2560. which amount was paid to the administrator d.b.n. on November 16, 1935.
*103 It is set forth in the report that “Both the attorney for the plaintiff and the defendant as administrator knew that the appointment of the administrator d.b.n. was for the purpose of bringing suit against Anna Hennessey for the amount of said deposits. There was no evidence from which it could be inferred that the bank deposits which were in the name of Anna Hennessey had been placed in her hands by Michael Hennessey, the intestate, in fraud of creditors.”
The Trial Court found that the amount received by the administrator d.b.n. in settlement of his claim against Anna Hennessey was not new assets, citing G. L. Ter. Ed. chapter 197, sections 9, 11, 17, and Fay vs. Haskell, Administrator, 207 Mass. 207-218, and found for the defendant.
The plaintiff seasonably filed certain requests for rulings which were neither denied nor allowed by the Trial Court. Subsequently and before the final arguments, the plaintiff added the following request, to-wit:
“The receipt of $2500. by the administrator November 15,1935, constituted new assets.”
This request was denied.
The sections of Chap. 197 above quoted have as their subject matter the limitation of actions by creditors. It is provided in section 11 as follows:
“If new assets come to the hands of an executor or administrator after the expiration of one year from the giving of his bond he shall account for and apply the same in like manner as if they had been received within said one year and shall be liable on account of such new assets to an action at law or to a proceeding in the Probate Court by or for the benefit of a creditor in like manner as if such assets had been received within the- one year, if such action or proceeding is commenced within six months after the creditor has notice of the receipt of such assets and within one year after they are actually received.”
*104 It is also provided in section 18 as follows:
“If new assets come to the hands of such administrator after the time before limited for the commencement of actions against him, he shall account for such new assets, and shall be liable on account thereof to an action at law and to proceedings in the Probate Court by or in behalf of a creditor, in like manner as is provided in this chapter relative to an original executor or administrator. ”
The expression in this section “such administrator” refers to administrators de bonis non.
The question at issue is whether the Trial Court was in error in'denying the plaintiff’s final request. Or stated otherwise, was the Trial Court bound to rule as a matter of law that the amount paid to the administrator d.b.n. constituted new assets.
Even if the cited case of Fay vs. Haskell did not support the Trial Judge in his ruling or refusal to rule, it does not necessarily follow that he was in error. Difficult questions have arisen in this Commonwealth as to what constitutes new assets. Generally speaking, it has been held that they must be assets the existence of which were not known at the time of settling the estate or which supposed to be of no value afterward turned out to have value. Examples of such are set forth in
Welsh vs. Welsh, 105 Mass. 229 (Transfer set aside as made in fraud of creditors);
Horton vs. Robinson, 212 Mass. 248 (deed absolute in form held to be a mortgage and redeemable);
Quincy vs. Quincy, 167 Mass. 536 (Reversionary interest supposed to be of no value and not inventoried but proving to be valuable);
Copeland vs. Fifield, 180 Mass. 223 (Subsequent profits from business in which deceased was a partner).
*105 Reference also may be made to the cases of White vs. Swain, 3 Pick. 365 and Fay vs. Haskell, supra.
Subsequent receipts from assets the extent of which were fully known at the time the inventory was filed are held not new assets in
Alden vs. Stebbins, 99 Mass. 616 (Proceeds of real estate sold to pay debts or rents received prior to the sale);
Shute vs. Wilkins, 163 Mass. 491 (Money raised upon a mortgage);
Robinson vs. Hodge, 117 Mass. 222 (Proceeds of patent rights which were included in the inventory) ;
Veazie vs. Marett, 6 Allen 372 (Sums recovered by administrator d.b.n. from surety on predecessor’s bond);
Sturtevant vs. Sturtevant, 4 Allen 122 (Proceeds of notes given for interest in partnership included in inventory);
Bradford vs. Forbes, 9 Allen 365 (Proceeds of suit pending at administrator’s death), and
Gould vs. Camp, 157 Mass. 358 (Recovery from mortgagee of surplus at foreclosure sale included in inventory).
It appears from the report in the instant case that the bank deposits involved herein were not included in either inventory. While the failure of the administrators to inventory the property is an important element, it is not decisive. Horton vs. Robinson, supra. For the purposes of a decision, it is important to analyze the cases of Fay vs. Haskell and Horton vs. Robinson, both supra, inasmuch as the Trial Judge bases his decision upon the former and the latter is cited by both parties in their briefs. While the question raised in Fay vs. Haskell was as to insolvent es- *106 totes, the decision is important in the interpretation of the words “New assets” as well as “Further assets” used in the statutes with reference to insolvent estates. The decision is at length and amply states the law with comment as to the cases theretofore decided. On page 217 and after the discussion of these cases the Court says:
" “It is impossible to give in advance a general definition of either of these terms Which shall specifically ' embrace all the cases properly within it and exclude all others and the cases must be settled as they arise. Generally however it may be said that neither term includes property for which the administrator has been charged in his. inventory or otherwise or the property into which the same or any part thereof has been changed or the natural increment of such property in the way of interest or otherwise.”
The defendant concedes in his brief that the case of Horton vs. Robinson, supra, “seems to cloud the issue.” He contends however that on the facts it is easily distinguishable. The facts in that cáse indicate that about a year and a half after- the -appointment of the defendant as executrix she brought a suit in equity in her own name as devisee against a person to whom the testator had given a deed of real estate, absolute in form, alleging that the deed was in fact a mortgage and -seeking to redeem the real estate and more than two years after giving notice of her appointment she obtained a decree for redemption under which she received a deed of the real estate upon paying personally the amount, of the mortgage debt. It further appeared that the defendant when she filed her inventory knew that her testator had made the deed alleged to be a mortgage and of the alleged promise to re-convey the real estate. The Court in its opinion says on page 251:
“The omission of the executrix to inventory the property although she knew of the promise to re-convey upon payment of the loan while significant is not deci *107 sive of the question. Gould vs. Camp, 157 Mass. 358, 360. It is certain however that by a conveyance absolute upon its face the testatrix had parted with the fee and whether the oral agreement could be established depended as the event proved upon the successful outcome of future litigation. The statute should be given a practical application which will advance and not defeat through over-refined distinctions the remedy given to the creditor. Fay vs. Horton, 207 Mass. 207, 212. When the testatrix died, no statute was pending as in Bradford vs. Forbes, 9 Allen 365, where after judgment the money collected was held not to be new assets, and the uncertainty of a suit in equity which would have to be instituted by the executrix to enforce the alleged right to redeem would not be considered ordinarily a commercial asset, or the equivalent of the property involved. It was not in the possession or within the control of the executrix until recovered, and an application for license to sell for the payment of debts a prospective law suit would have been a useless and vain formality. If the right to redeem was vested in the testatrix, the uncertainty whether it had any appreciable value was much greater than in Quincy vs. Quincy, 167 Mass. 536, and in Copeland, vs. Fifield, 180 Mass. 223, where a reversionary interest in real property supposed to have had no value at the intestate’s death, and not inventoried, but which long afterwards proved to be valuable, and profits made by an administrator who continued the business of his intestate, were decided to be assets. The defendant was not previously liable for this portion of the estate, but when she received the conveyance the property constituted assets now in existence when the inventory was filed, and which were new. ’ ’
In deciding the issue before us, we deem ourselves bound by this decision as the facts are so nearly analogous. In deciding the issue we are confined within the borders of the report. It might be more helpful than it is. However that may be and taking it as it comes before us, it appears that Anna Hennessey, the sister of the deceased, was the depos *108 itor named in bank deposits of the value of approximately seven thousand dollars. It does not appear that the right to these deposits was in any way qualified, modified or extended by any endorsement making the same payable to any other person or persons nor does it appear by whom the deposits were made. It does not appear what was the character of the action stated to have been begun by the sister of Anna Hennessey in which the ownership of these same bank deposits was involved. The most we here have is a statement that Anna Hennessey had certain deposits in banks in her own name, that her sister claimed a portion of them, that after the appointment of Scanlon he brought suit against Anna Hennessey for the amount of the bank deposits ; that this suit did not go to judgment so that there Was no verdict, finding or decree establishing the right of the plaintiff to the deposits but that $2560. was paid to the plaintiff in his official capacity by the said Anna Hennessey. On the report it cannot even be said that the estate had a right of action against Anna Hennessey. The motivating reason for the payment of the $2560. may so far as the record is concerned have been simply a desire to avoid expense and litigation, and the relatively small proportion of the $7000. thus paid seems so to indicate.
We see no real difference between the right to pursue the equity of redemption in the case of Horton vs. Robinson, supra, and the right in the instant case to seek to recover these bank deposits. Under the circumstances here disclosed, it ¿ppears clear to us that the monies thus received came within the definition of “new assets” and that the Trial Court erred in refusing to give the requested ruling to that effect. By so holding we are following the suggestion heretofore quoted that
“The statute should be given a practical application which will advance and not defeat through over-refined distinctions the remedy given to the creditor.”
*109 Accordingly the finding of the Trial Court for the defendant must be vacated and the case remanded to the Trial Court for the sole purpose of determining the amount due, if any, to the plaintiff.